IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Robert Meyer, et al., | Case No. 3:04 CV 7301 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| AmeriSourceBergen Drug Corporation, | |
| Defendant. | |

**INTRODUCTION**

Plaintiffs Robert and Janet Meyer, residing in Tiffin, Ohio, bring this action against Defendant AmeriSourceBergen Drug Corporation ("AmeriSource") in an employment contract dispute between Robert Meyer ("Meyer") and Defendant. AmeriSource is a corporation headquartered in Pennsylvania with a distribution center in Toledo, Ohio.

Jurisdiction is proper under 27 U.S.C. §2201 and 28 U.S.C. §1332(a)(2) and venue is proper under 28 U.S.C. §1391(a)(1) and (2).

**THE EMPLOYMENT AGREEMENT**

AmeriSource (and its predecessors) employed Meyer beginning in 1985 (Meyer deposition, p. 11). He became a division manager (p. 17) and later a regional vice president (p. 22). In early 2000, Meyer and his attorney negotiated an Employment Agreement ("Agreement") with Defendant which allowed Meyer to scale back his duties with an eye toward retirement (pp. 47-49). By its terms, this Agreement (Exhibit A) is governed by Ohio law and was executed effective April 1, 2000 for three years (p. 53).

The Agreement called for Meyer to perform specific duties and work a reduced number of hours during the three-year employment period (pp. 53-54). The Agreement also governed incentive compensation, severance compensation, and benefits for Plaintiffs following the termination of Meyer's employment.

Among his modified job duties, Meyer was responsible for operating AmeriSource University, a training program for management-level employees. Further, Meyer was to be involved in "special projects related to Home Health Care and Health Services Plus as well as AmeriSource Medical Supply" (§1(a)). The Agreement provided that his duties could be changed by the mutual written consent of both parties to the Agreement (§1(c)).

The Agreement provided for incentive compensation as follows: "During the Employment Period, Employee may be entitled to receive incentive compensation … as may be authorized, declared and paid by the Board of Directors of the Company based upon personal and Company performance at a rate applicable to comparable Company executives" (§3(b)). In addition, Meyer was entitled to participate in all employee benefit plans provided to all other similarly situated employees (§3(c)), and was given four (4) personal and fifteen (15) vacation days per year (§3(d)).

Upon termination, Meyer was entitled to a lump sum severance of twice his annual salary, or $147,600, within thirty (30) days of his termination (§11(e)). Also, Meyer and his spouse were entitled to medical, health, and prescription drug plan premiums, paid for by the Company (§11(f)(I)); specifically, the Agreement obligated AmeriSource to pay premiums pursuant to COBRA for both Plaintiffs for eighteen (18) months or until eligible for Medicare coverage. Alternatively, Plaintiffs were entitled to enrollment in "Company's Health plan for Designated Personnel (alternative plan

coverage) upon waiver of COBRA coverage" until each of the Plaintiffs were entitled to Medicare coverage. Again, AmeriSource was to cover premium costs.

## BACKGROUND

Shortly after the Agreement went into effect, a number of changes took place that reduced and then eliminated Meyer's responsibilities. First, AmeriSource divested itself of its Home Health Care division. Meyer played an active role in the divesture of this division, knowing that it would directly lead to a change in his duties as outlined in the Agreement. A few months later, following the merger of AmeriSource and Bergen, Meyer's remaining duties were eliminated because his previous roles overlapped with those already existing within Bergen. At no point did Meyer protest these changes, nor did he try to maintain his role in the post-merger organization. At most, he expressed disagreement with the new direction. By September 2001, Meyer no longer had any responsibilities at AmeriSource and no longer reported for work.

Nonetheless, for the next two years, AmeriSource performed its obligations under the Agreement and Meyer received his full salary and benefits. In the first year of the Agreement, Meyer also received a Ten Thousand Dollar ($10,000) bonus and Eight Thousand (8,000) stock options. For the last two years of the Agreement, he received neither a bonus nor stock options.

As Meyer's employment term was coming to a close, AmeriSource, pursuant to §11(f) of the Agreement, sent Meyer a letter asking for a signed general release in exchange for the previously agreed upon severance pay and healthcare benefits. Meyer objected to the contents of the release and refused to sign. He made a counter proposal which Defendant rejected. This lawsuit followed.

3

**SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Civil Rule 56(b), Defendant filed a Motion Summary Judgment with regards to all claims in the Complaint. Despite multiple grants of leave by this Court to file an opposition, Plaintiffs have not opposed the Motion. This Court is guided by the rule that where "the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party" Fed.R.Civ.P. 56(e) (emphasis added). "A court may enter summary judgment *sua sponte* in favor of a nonmoving party when the moving party has had adequate opportunity to present evidence on the issue on which summary judgement is granted." *In re Land*, 289 B.R. 71, 77 (N.D.Ohio 2003) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 204 (6th Cir.1998)).

Numerous courts of appeal have passed on the standard for judging unopposed motions for summary judgment. The Second Circuit has repeatedly asserted the standard that where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001); *see also, Sloane v. Getz*, 150 Fed.Appx. 86, 88 (2d Cir. 2005), *Vt. Teddy Bear Co. v. 1-800 Beargram Co.* 373, F.3d 241, 244 (2d Cir. 2004). Other courts have similarly ruled that the district court is "still obliged to consider the motion on its merits, in light of the record as constituted, to determine whether judgment would be legally appropriate." *Mullen v. St. Paul Fire and Marine Ins. Co.*, 972 F.2d 446, 452 (1st Cir. 1992).

**A. Incentive Compensation**

Meyer argues that he is entitled to both bonus pay and stock options under the Agreement. The relevant language in the Agreement is found at §3(b), which states that Plaintiff "**may** be entitled" to incentive compensation as "**may** be authorized" by AmeriSource based on **both** personal and Company performance **and** at a rate applicable to "comparable executives." (emphasis added)

In an analogous case, *Imbrogno v. MIMRx.COM, Inc.*, No. 03AP-345, 2003-Ohio-6108 (Ohio Ct. App. 10 Dist. November 18, 2003), the court found a similar incentive clause to be unenforceable. There, the agreement provided that "Stock Options commensurate with your position will be offered. The number of options granted to you will be subject to approval by the Company's Compensation Committee or its designee." *Id.* at ¶9. The court found this incentive pay clause to be discretionary. More importantly, the *Imbrogno* court held that a contract term promising future stock options at the unlimited discretion of the promisor is nothing more than an illusory promise. *Id.* at ¶¶ 8-10. Accordingly, such terms are unenforceable. *Id.*

Further, the use of a only a job title or rank to determine what might be considered a "similarly situated employee" fell short of a clear standard to suggest an objective basis for comparison. *Id.* at ¶15. In that case, plaintiff was a customer service manager, and she requested the bonus data of a pharmacy manager. The two were seen by the court to be too different as a matter of law to be read as similarly situated.[1]

---

[1] We do not need to address the issue of comparable executives in the instant case because Plaintiff admits, and the Agreement states, incentive pay was discretionary and the record discloses no abuse of discretion.

The Agreement here did not provide Meyer with any reasonable certainty as to how bonuses and options would be issued. He acknowledged that he had not received incentive compensation, even as a vice president, in some years prior to the Agreement (p. 87). Meyer also acknowledged that incentive compensation was at the sole discretion of the Board, which was under no obligation to grant stock options (pp. 86- 87), and that he last reviewed stock options in 1997 (p. 93). As the Board was vested with unfettered discretion regarding incentive compensation, the promise made in §3(b) of the Agreement was merely illusory, and thus unenforceable. Accordingly, Meyer is not entitled to incentive compensation.

**B.    Change of Duties**

Meyer complains that the elimination of his duties constitutes a breach of §1(c) of the Agreement, requiring "mutual written consent," and that this reduction diminished his incentive compensation. Under §1(a) of the Agreement, Meyer's specific duties included: "administration and planning of AmeriSource University programs, special projects related to Home Health Care and Health Services Plus as well as AmeriSource Medical Supply."

Meyer acknowledged that he was involved in and approved of the divestiture of the Home Health Care division, and stated that he did so with the knowledge that this would eliminate his corresponding duties under the Agreement (pp. 147-48). The language of the incentive compensation clause (§3(b)) was clear that personal performance was a measure of entitlement to any potential bonus. Meyer knew the elimination of his Home Health Care duties could have a corresponding effect on Defendant's ability to measure his performance.

When AmeriSource merged with Bergen in 2001, Meyer's responsibilities for educational programs were eliminated, and Meyer did not lobby to keep AmeriSource University after the merger

6

(p. 147). Bergen also had its own equivalent of Health Services Plus. Meyer therefore had no more special projects. The Agreement protected Meyer from an increase in duties without a commensurate increase in salary but did not guarantee his duties would remain the same. In any event, Meyer waived his right to claim damages from any reduction in duties by sitting silent for two years and collecting his salary (pp. 68-69).

### C. Stock Options

Meyer claims that Defendant breached §3(g) of the Agreement by failing to give him timely notice of options awarded and failing to accelerate the exercise period for the stock options. However, he was made aware of his options before the end of his Agreement, he received the options and accelerated the exercise period, and admitted he could show no damage by any delay (pp. 155-56).

### D. Lump Sum Severance

It is undisputed that Meyer is entitled to a lump sum severance of twice his annual pay of $73,800. He was entitled to receive this severance pay within thirty (30) days after his final day of employment. Meyer is therefore entitled to twice his annual pay.

The Agreement clearly states in §11(3) that if Meyer's employment was terminated under §11(a)(I), as it was, that the "Company shall pay Meyer a lump sum severance amount equal to two (2) times his annual salary." The only condition under which Meyer was not due this payment was if he was terminated "for cause" or through voluntary termination, neither of which occurred. The Agreement also contemplated Plaintiffs signing a general release in exchange for lump sum payment (§11(h)).

7

Similarly, it is undisputed Defendant was obligated to provide "medical, health, and drug plan coverage insurance for Meyer and his spouse" under §11(f) of the Agreement. The parties stipulated that this amount equals $15,572.85 (Docket No. 40).

### E.  Vacation and Personal Days

Plaintiffs' claims for unused personal and vacation days are without merit. The Agreement has no provision indicating that such days are exchangeable for pay. Further, there was no expectation by Meyer for payment for unused vacation time (pp. 126-27). Moreover, Meyer was effectively on vacation for nearly two years, having no obligations to Defendant. During that time, he took at least six weeks of vacation time (pp. 159-60).

### F.  Insurance Coverage

Meyer claims AmeriSource breached Section 12 of the Agreement by failing to show insurance coverage for Plaintiffs required by the Company's indemnity obligations. However, the record shows Meyer was and has been covered by indemnity insurance and, in any event, had no claim or loss. This argument is without merit.

### G.  Implied Duty of Good Faith and Fair Dealing

Meyer also claims Defendant breached its contractual obligation by demanding that Plaintiff sign a general release in exchange for payment of his lump sum severance. This argument also fails. The Agreement expressly contemplates Meyer signing a release (§11(h)). Therefore, Defendant did not violate any duty of good faith and fair dealing. Plaintiff, an experienced businessman with the benefit of legal counsel, was on notice that a release was part of the Agreement.

### H. Oral Contract Claim

Meyer alleges that Defendant breached an oral contract made prior to entering into the Agreement, whereby Meyer was to receive incentive compensation. However, Meyer admits he had no specific agreement (pp. 156-57). Further, both the statute of frauds, Ohio Rev. Code §1335.05, and the Agreement preclude such a claim. The integration clause of the Agreement, §18, states that the Agreement was intended to "replace . . . and supersede . . . any and all prior oral and written agreements and understandings between Meyer, on the one hand, and the Company on the other hand." This claim is without merit.

### CONCLUSION

Defendant's Motion for Summary Judgment (Docket No. 28) is granted in part and denied in part.

Plaintiffs' claims are denied with the exception that Plaintiff is entitled to $147,600 (two (2) year lump sum severance) and reimbursement for the cost of COBRA and healthcare premiums for Robert and Janet Meyer in the sum of $15,572.85 for a total award to Plaintiffs of $163,172.85.

IT IS SO ORDERED.

   s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 31, 2006